## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 05 B 54583 |
| | ) | Chapter 11 |
| JOSEPH WILLIAM GIFFUNE, JR., | ) | Judge John H. Squires |
| | ) | |
| Debtor. | ) | |

### MEMORANDUM OPINION

This matter comes before the Court on the objections of Richard J. Mason, the Chapter 7 trustee (the "Company Trustee") for the jointly administered estates of JII Liquidating, Inc., formerly known as Jernberg Industries, Inc., IM Liquidating, LLC, formerly known as Iron Mountain Industries, LLC, and JSI Liquidating, Inc., formerly known as Jernberg Sales, Inc. (collectively, the "Jernberg Companies"), Midwest Bank and Trust Company ("Midwest Bank"), ABN AMRO Mortgage Group ("ABN AMRO"), and LaSalle Bank National Association ("LaSalle Bank") to the claims of exemptions by Joseph William Giffune, Jr. (the "Debtor") in certain real properties located in the states of Illinois and Michigan and held in tenancy by the entirety. For the reasons set forth herein, the Court sustains the objections of the Company Trustee and Midwest Bank to the Debtor's claims of exemptions in the Michigan properties and overrules the objections with respect to the Debtor's Illinois property. The objection lodged by ABN AMRO and LaSalle Bank is untimely and therefore overruled.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

-2-

## II. FACTS AND BACKGROUND

The relevant facts are undisputed. The Debtor filed a voluntary Chapter 11 bankruptcy petition on October 14, 2005. The Debtor was married at the time of the filing, but his spouse did not seek bankruptcy relief. The Debtor's Schedule A, as amended, reflects certain real properties that he owns with his wife as tenants by the entirety. (Docket No. 39.) These properties include real estate located in Naperville, Illinois, that is alleged to be the Debtor's residence (the "Illinois Property").[1] (*Id.*) Amended Schedule A reflects that the value of the Debtor's one-half interest in the Illinois Property is $375,000.00 and that the property is encumbered by a mortgage of $350,000.00. (*Id.*) The Debtor and his spouse also own the following unencumbered properties situated in New Buffalo, Michigan, as tenants by the entirety: (1) a cottage; (2) two vacant lots; (3) a condominium and a slip; and (4) a condominium (collectively, the "Michigan Properties").[2] (*Id.*) Together, the Debtor's interests in the Michigan Properties are valued at $930,000.00.[3]

---

[1] ABN AMRO and LaSalle Bank allege that "[w]hile Debtor's Schedule C lists the property located at 7S441 Old College Road, Naperville[,] [Illinois,] as a homestead exemption, Debtor has represented to the joint creditor-objectors that his residence is located at 545 S[.] Lee Avenue, Downers Grove, Illinois." (ABN AMRO & LaSalle Bank Objection ¶ 7.) The record contains no other information regarding the Downers Grove, Illinois, property. The parties do not dispute that the Debtor's homestead is located in Illinois. Therefore, whether the Debtor resides in Naperville or Downers Grove is of no moment with respect to the particular issue at bar.

[2] The property referred to in the Company Trustee's surreply differs from the items listed in the Debtor's Schedules A and C. Specifically, the schedules note that the Michigan Properties consist of a cottage, two vacant lots, two condominiums, and one slip. (Docket Nos. 39 & 44.) In contrast, the Company Trustee's surreply refers to a home, two vacant lots, one condominium, and two slips. (Co. Tr. Surreply ¶¶ 1(b)-(e).) This discrepancy, however, is not outcome determinative.

[3] Individually, the Debtor's one-half interests in the properties' are as follows: (1) $750,000.00 for the cottage; (2) $100,000.00 for the two vacant lots; (3) $72,500.00 for the condominium and slip; and (4) $7,500.00 for the condominium. (Docket Nos. 39 & 44.)

·3·

The Debtor claims separate exemptions for his one-half interests in the Illinois Property and the Michigan Properties under each state's exemption laws. (Docket No. 44; Co. Tr. Objection ¶ 5.) Each exemption is based on the fact that the Debtor holds the property interests in tenancy by the entirety with his spouse. (*Id.*)

Sometime prior to filing the bankruptcy petition, the Debtor was an officer of the Jernberg Companies. (Debtor Reply Ex. B ¶ 4.) The Jernberg Companies are presently debtors in Chapter 7 cases that are being jointly administered. (Co. Tr. Objection p. 1.) Richard J. Mason was appointed the trustee for the Jernberg Companies' bankruptcy estates. (*Id.* ¶ 3.) On December 19, 2005, the Company Trustee filed a proof of claim in the Debtor's case (Debtor Reply Ex. B), which he subsequently amended on January 18, 2006. Also on December 19, 2005, the Company Trustee filed an objection to the Debtor's claimed exemptions in the Illinois Property and the Michigan Properties. (Docket No. 51.) The Company Trustee argues that the Debtor is prohibited from asserting exemptions under the statutes of two separate states. (Co. Tr. Objection ¶ 6.) He further contends that only Illinois exemptions apply because the Debtor is domiciled in Illinois and that state has "opted out" of the federal exemptions under 11 U.S.C. § 522(d). (*Id.*) Finally, the Company Trustee maintains that because Illinois law limits a married couple's exemption in property held in tenancy by the entirety to their homestead, the Debtor cannot exempt the Michigan Properties. (*Id.* ¶ 7.)

In response, the Debtor argues that the exemptions asserted under the laws of both Illinois and Michigan are proper and conform to the plain meaning of § 522(b)(2) of the Bankruptcy Code. (Debtor Reply ¶¶ 3-8.) According to his reading of the statutory provision, the laws of the state of a debtor's domicile control only those exemptions asserted in personal property and

·4·

homesteads under § 522(b)(2)(A), not the exemptions asserted in real property held by a debtor under § 522(b)(2)(B). (*Id.* ¶ 6.) In addition, the Debtor claims that the Company Trustee does not have standing to raise his objection. (*Id.* ¶ 2.)

On January 31, 2006, Midwest Bank filed an objection wherein it joined the Company Trustee's objection in the event that he lacks standing to object to the Debtor's exemptions. (Midwest Bank Objection ¶ 11.) Midwest Bank filed a proof of claim in the Debtor's case on December 20, 2005 in the amount of $757,781.25. (*Id.* ¶ 6.) An additional objection was filed jointly by ABN AMRO and LaSalle Bank on April 12, 2006, whereby they joined and adopted the objection raised by the Company Trustee. (ABN AMRO & LaSalle Bank Objection ¶ 8.)[4] ABN AMRO and LaSalle Bank also filed proofs of claim in the Debtor's case. (*Id.* ¶ 4.)

### III. APPLICABLE STANDARDS

#### A.    Contested Claims of Exemptions

A bankruptcy estate is created upon the filing of a bankruptcy petition. 11 U.S.C. § 541(a). With certain exceptions not applicable here, the estate is composed of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); see also *Koch Refining v. Farmers Union Cent. Exch., Inc.,* 831 F.2d 1339, 1343 (7th Cir. 1987) (noting that whatever legal or equitable interests "the debtor had in property as of the filing of the bankruptcy petition [constitute] property of the bankruptcy estate"). Once a bankruptcy estate is created, debtors are permitted to claim exemptions in certain property. 11

---

[4]    In their objection, ABN AMRO and LaSalle Bank inadvertently styled two paragraphs as paragraph 7.

-5-

U.S.C. § 522(b). "An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor." *Owen v. Owen*, 500 U.S. 305, 308 (1991). A debtor's exemption rights are determined as of the date the bankruptcy petition was filed. *See* 11 U.S.C. § 522(b)(2)(A); *Williams v. Giamanco (In re Starr)*, 123 B.R. 314, 316 (Bankr. S.D. Ill. 1991); *In re Summers*, 108 B.R. 200, 203 (Bankr. S.D. Ill. 1989).

Federal Rule of Bankruptcy Procedure 4003 governs hearings on claims of exemptions and objections thereto. Section 522(l) of the Code and Bankruptcy Rule 4003(a) require debtors to "list" the property claimed as exempt on the schedule of assets. 11 U.S.C. § 522(l); FED. R. BANKR. P. 4003(a). "Unless a party in interest objects, the property claimed as exempt on such list is exempt." 11 U.S.C. § 522(l); *see also Taylor v. Freeland & Kronz*, 503 U.S. 638, 642 (1992). Bankruptcy Rule 4003(b) establishes that an objection to the list of property claimed exempt must be filed within 30 days after the conclusion of the meeting of creditors or within 30 days after any amendment to the list of claimed exemptions is filed, whichever is later. FED. R. BANKR. P. 4003(b); *see also Taylor*, 503 U.S. at 643-44 (finding that failure to object within the 30 days provided by Rule 4003(b) waives the right to object); *In re Salzer*, 52 F.3d 708, 712 (7th Cir. 1995) (same). An objecting party has the burden of proving by a preponderance of the evidence that a debtor's exemptions are not properly claimed. FED. R. BANKR. P. 4003(c); *In re Doyle*, 209 B.R. 897, 900 (Bankr. N.D. Ill. 1997); *In re Ritter*, 190 B.R. 323, 325 (Bankr. N.D. Ill. 1995).

**B.    Tenancy by the Entirety**

The bankruptcy estate consists of all property of the debtor, including any interests he may hold in property as a tenant by the entirety. *In re Hunter*, 970 F.2d 299, 305 (7th Cir. 1992). A

·6·

tenancy by the entirety is "a common law form of marital ownership that creates between spouses joint ownership of an undivided interest in property which may not be transferred or encumbered by either spouse acting alone." *In re Paeplow*, 972 F.2d 730, 733 (7th Cir. 1992) (defining tenancy by the entirety under Indiana law); *see also Lee Supply Corp. v. Agnew (In re Agnew)*, 818 F.2d 1284, 1287-88 (7th Cir. 1987) (same). Whether such an interest has been created is defined by state law. *Butner v. United States*, 440 U.S. 48, 54 (1979). Although both Illinois and Michigan allow for the creation of tenancy by the entirety property, each state differs in how it treats the estate for purposes of its exemption laws.

In Illinois, the Joint Tenancy Act, 765 ILL. COMP. STAT. 1005/0.01 *et seq.* (2004), provides for the creation of tenancy by the entirety. *Premier Prop. Mgmt., Inc. v. Chavez*, 728 N.E.2d 476, 479 (Ill. 2000). An estate held in tenancy by the entirety, however, is limited to "homestead" property held by a husband and wife "during coverture." 765 ILL. COMP. STAT. 1005/1c. Under Illinois law, property held in tenancy by the entirety cannot be sold to satisfy the debt of only one spouse. 735 ILL. COMP. STAT. 5/12-112 (2004); *Premier Prop. Mgmt.*, 728 N.E.2d at 479. That is, property is not exempt from any claims for which both husband and wife share liability. *In re Eichhorn*, 338 B.R. 793, 797 (Bankr. S.D. Ill. 2006).

Michigan's recognition of tenancy by the entirety acknowledges the common law concept associated with the estate–that husband and wife represent one unit upon marriage. *United States v. Certain Real Prop. Located at 2525 Leroy Ln., W. Bloomfield, Mich.*, 972 F.2d 136, 138 (6th Cir. 1992); *Rogers v. Rogers*, 356 N.W.2d 288, 292-93 (Mich. Ct. App. 1984). In marked contrast to Illinois law, Michigan allows married individuals to hold not only homestead property but also other property as tenants by the entirety. *See DeYoung v. Mesler*, 130 N.W.2d 38, 40-41

-7-

(Mich. 1964); *see also* MICH. COMP. LAWS ANN. § 557.71 (West 2006). Absent an expression

to the contrary, a presumption arises that any conveyance of property to a husband and wife

creates a tenancy by the entirety. *Tamplin v. Tamplin*, 413 N.W.2d 713, 715 (Mich. Ct. App.

1987); *Butler v. Butler*, 332 N.W.2d 488, 490 (Mich. Ct. App. 1983).


## IV. DISCUSSION

### A.    The Timeliness of the Objection Filed by ABN AMRO and LaSalle Bank

As a preliminary matter, the Debtor takes issue with the timeliness of the objection filed

by ABN AMRO and LaSalle Bank. Specifically, the Debtor contends that the 11 U.S.C. § 341

meeting of creditors was held on November 17, 2005, that all objections to his exemptions were

therefore required to be filed by December 19, 2005, and that ABN AMRO and LaSalle Bank's

objection was not filed until April 12, 2006.

The Court notes that the Debtor incorrectly calculates the deadline for filing objections

to his claims of exemptions. The Debtor filed several amendments to his list of property claimed

exempt, the last of which was filed on December 14, 2005. (Docket No. 44.) Thus, the period

for objecting to the Debtor's exemptions expired on January 13, 2006, 30 days after he filed the

most recent amendment. *See* FED. R. BANKR. P. 4003(b). "Once the period [under Bankruptcy

Rule 4003(b)] expires, creditors are out of luck even if the claim of exemption is specious." *In

re Schoonover*, 331 F.3d 575, 578 (7th Cir. 2003); *see also In re Kazi*, 985 F.2d 318, 320 (7th Cir.

1993) (finding that "[f]ailure to file a timely objection is an absolute bar to consideration of the

merit of the exemptions"). Because ABN AMRO and LaSalle Bank filed their objection on April

12, 2006, the Court concludes that they did not timely object to the Debtor's claims of exemptions

-8-

in the Illinois Property and the Michigan Properties.[5]  Accordingly, the Court overrules that objection.

## B.     The Company Trustee's Standing

Next, the Court addresses the issue of whether the Company Trustee has standing to raise his objection to the Debtor's claims of exemptions in the Illinois Property and the Michigan Properties.  Bankruptcy Rule 4003(b), which governs objections to claims of exemptions, provides in relevant part that "[a] *party in interest* may file an objection to the list of property claimed as exempt. . . ."  FED. R. BANKR. P. 4003(b) (emphasis supplied).  Moreover, in a Chapter 11 case, a "party in interest . . . may raise and may appear and be heard on any issue in a case under this chapter."  11 U.S.C. § 1109(b).  Courts interpret the term "party in interest" broadly, finding that it includes "anyone holding a direct financial stake in the outcome of the [bankruptcy] case."  *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 284 (7th Cir. 2002) (internal quotation omitted); *see also In re FBN Food Servs., Inc.*, 82 F.3d 1387, 1391 (7th Cir. 1996) (defining "party in interest" as "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding" (internal quotation omitted)).

The Court finds that the Company Trustee is a party in interest under Bankruptcy Rule 4003(b) for purposes of lodging an objection to the Debtor's claims of exemptions.  The Company Trustee, on behalf of the Jernberg Companies, filed a proof of claim in the Debtor's case on December 19, 2005.  Thus, he is a creditor of the estate and holds a claim disputed by the

---

[5] Midwest Bank's objection was filed on January 31, 2006.  (Docket No. 86.)  Prior to that date, however, Midwest Bank moved for and received an extension of the exemption objection deadline to January 31, 2006.  (Docket Nos. 49 & 53.)  Thus, Midwest Bank's objection is timely.

-9-

Debtor. As a creditor in this Chapter 11 case, the Company Trustee has a "direct financial stake in the outcome of the [bankruptcy] case," *see FutureSource*, 312 F.3d at 284, because he will share in the pro rata distribution of the estate's assets via the plan of reorganization. Regardless of the Court's ultimate decision with respect to the validity of the Company Trustee's proof of claim, the Court finds that the Company Trustee has standing to object to the Debtor's claims of exemptions.[6]

**C.      The Propriety of the Debtor's Claims of Exemptions in the Illinois Property and the Michigan Properties**

At the heart of this matter is whether under 11 U.S.C. § 522(b)(2)(B) the Debtor can properly claim exempt his interests in the Michigan Properties held in tenancy by the entirety, notwithstanding the fact that Illinois opted out of the federal exemptions and limits tenancy by the entirety to homestead property. The proper construction and application of § 522(b)(2) and the relevant Illinois exemption statute is an issue of first impression in this Court.

Resolution of this matter requires examination of the applicable statutory language itself, which is the best evidence of the purpose of the statutes. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989); *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 543 (7th Cir. 2003); *In re Lifschultz Fast Freight Corp.*, 63 F.3d 621, 628 (7th Cir. 1995); *Stiffler v. Lutheran Hosp.*, 965 F.2d 137, 139 (7th Cir. 1992); *Grabscheid v. Denbo Iron & Metal Co. (In re Luria Steel & Trading Corp.)*, 189 B.R. 418, 422 (N.D. Ill. 1995). Where a provision is unambiguous, courts must give effect to the plain meaning of the statutory language. *Ron Pair*

---

[6] That the Company Trustee may have a claim against only the Debtor and not his spouse, and thereby is unable to force a sale of the entireties property under state law, does not preclude his statutory standing under § 1109(b) and Bankruptcy Rule 4003(b).

·10·

*Enters.*, 489 U.S. at 241; *In re Voelker,* 42 F.3d 1050, 1051 (7ᵗʰ Cir. 1994). "[T]he only legitimate function of the judiciary is to enforce the law as enacted by the legislature." *United States Fire Ins. Co. v. Barker Car Rental,* 132 F.3d 1153, 1156 (7ᵗʰ Cir. 1997). The "primary rule of statutory construction is to ascertain and give effect to the intent of the legislature." *In re Hellen,* 329 B.R. 678, 682 (Bankr. N.D. Ill. 2005) (*quoting People v. Donoho,* 788 N.E.2d 707, 715 (Ill. 2003)).

Absent specific statutory definitions, words or terms in a statute are presumed to have their ordinary, common, and contemporary meaning, unless such a construction would defeat the intention of the drafters. *Precision Indus.,* 327 F.3d at 544 (*citing Walters v. Metro. Educ. Enters., Inc.,* 519 U.S. 202, 207 (1997)); *Newsom v. Friedman,* 76 F.3d 813, 817 (7ᵗʰ Cir. 1996) ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning." (internal quotation omitted)). Further, according to conventional rules of statutory construction, courts interpret words and phrases in such a way as to avoid rendering them redundant, superfluous, or meaningless. *In re Merchs. Grain, Inc.,* 93 F.3d 1347, 1353-54 (7ᵗʰ Cir. 1996).

Although courts "have a duty to give effect, if possible, to every clause and word of a statute," they should "not be guided by a single sentence or member of a sentence . . . ." *Lifschultz Fast Freight Corp.,* 63 F.3d at 628 (internal quotation omitted). Instead, statutory interpretation "is a holistic endeavor, . . . and, at a minimum, must account for a statute's full text . . . [and] language[,] as well as punctuation, structure, and subject matter." *United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.,* 508 U.S. 439, 455 (1993) (internal quotation omitted); *see also United States v. Jones,* 204 F.2d 745, 754 (7ᵗʰ Cir. 1953) (noting that "[s]tatutes are to be construed as a whole").

·11·

In the matter at bar, there are two statutes at issue: § 522(b) of the Bankruptcy Code and

the Illinois exemption statute, 735 ILL. COMP. STAT. 5/12-1201 (2004). "Where two statutes deal

with the same subject matter, they are to be read in *pari materia* and harmonized when possible."

*In re Johnson*, 787 F.2d 1179, 1181 (7th Cir. 1986); *see also Kohler Co. v. Moen Inc.*, 12 F.3d

632, 642 (7th Cir. 1993) (stating that "a fundamental rule of statutory construction requires that

statutes are to be construed, if possible, in harmony with . . . other applicable statutes"); *Bethea*

*v. Robert J. Adams & Assocs.*, 287 B.R. 906, 909 (N.D. Ill.) (*quoting Johnson*), *vacated on other*

*grounds*, 352 F.3d 1125 (7th Cir. 2003).

Starting with § 522(b) of the Code, the provision offers two statutory alternatives under

which the Debtor may exempt property from the estate. *See* 11 U.S.C. § 522(b). The statute

provides in relevant part as follows:

> (b)     Notwithstanding section 541 of this title, an individual debtor
> may exempt from property of the estate the property listed in
> either paragraph (1) or, in the alternative, paragraph (2) of this
> subsection. . . . Such property is–
>
> > (1)     property that is specified under subsection (d) of this
> > section, unless the State law that is applicable to the
> > debtor under paragraph (2)(A) of this subsection
> > specifically does not so authorize; or, in the alternative,
> >
> > (2)     (A)     any property that is exempt under Federal law,
> > other than subsection (d) of this section, or State
> > or local law that is applicable on the date of the
> > filing of the petition at the place in which the
> > debtor's domicile has been located for the 180
> > days immediately preceding the date of the filing
> > of the petition, or for a longer portion of such 180-
> > day period than in any other place; and
> >
> > > (B)     any interest in property in which the debtor had,
> > > immediately before the commencement of the

·12·

> case, an interest as a tenant by the entirety or joint
> tenant to the extent that such interest as a tenant
> by the entirety or joint tenant is exempt from
> process under applicable nonbankruptcy law.

11 U.S.C. § 522(b).

Under the first option in § 522(b)(1), a debtor may take advantage of the federal

bankruptcy exemptions set forth by Congress in § 522(d) unless the debtor's state of domicile

does not authorize those exemptions. 11 U.S.C. § 522(b)(1); *In re Fishman*, 241 B.R. 568, 571

(Bankr. N.D. Ill. 1999). In the event the debtor voluntarily forgoes the exemptions enumerated

in § 522(d) or is prohibited from claiming them under state law, the second option under §

522(b)(2)(A) allows a debtor to exempt property under state or local law that is applicable in the

debtor's domicile.[7] 11 U.S.C. § 522(b)(2)(A); *Fishman*, 241 B.R. at 571. Further, § 522(b)(2)(B)

expressly allows debtors in opt-out states to exempt "an interest as a tenant by the entirety . . . to

the extent that such interest as a tenant by the entirety . . . is exempt from process under

*applicable nonbankruptcy law*." 11 U.S.C. § 522(b)(2)(B) (emphasis supplied); *see also*

*Schlossberg v. Barney*, 380 F.3d 174, 178 (4th Cir. 2004); *In re Tolson*, 338 B.R. 359, 364 (Bankr.

C.D. Ill. 2005). It is the phrase "applicable nonbankruptcy law" that is at the center of this

dispute.

The parties do not dispute that the Debtor's domicile for purposes of § 522(b)(2)(A) is

Illinois. Nor do the parties contest that Illinois "opted out" of the § 522(d) federal exemption

scheme. *See* 735 ILL. COMP. STAT. 5/12-1201; *see also In re Sullivan*, 680 F.2d 1131, 1133 (7th

---

[7]   In this matter, the Debtor selected the § 522(b)(2) option on his original and
amended Schedule C wherein he claimed exempt, *inter alia*, the Illinois Property and
Michigan Properties.

-13-

Cir. 1982). Accordingly, the Court must look to the Illinois exemption statute and harmonize it

with § 522(b)(2). *See Johnson*, 787 F.2d at 1181. The Illinois statute provides as follows:

> In accordance with the provision of Section 522(b) of the
> Bankruptcy Code of 1978, (11 U.S.C. 522(b)), *residents of this
> State shall be prohibited from using the federal exemptions
> provided in Section 522(d) of the Bankruptcy Code of 1978 (11
> U.S.C. 522(d)), except as may otherwise be permitted under the
> laws of Illinois.*

735 ILL. COMP. STAT. 5/12-1201 (emphasis supplied).

Despite the need to read both § 522(b) and the Illinois exemption statute in their entirety,

the parties focus solely on § 522(b)(2)(B). The Company Trustee urges the Court to conclude that

"applicable nonbankruptcy law" under § 522(b)(2)(B) refers to the law of the Debtor's domicile

state as reflected in § 522(b)(2)(A). As discussed *supra*, that state is Illinois. According to the

Company Trustee, the Debtor cannot claim exemptions in the Michigan Properties because the

Debtor is domiciled in a state other than Michigan and filed a bankruptcy petition in Illinois.[8]

---

[8] The Company Trustee contends that application of Illinois's exemption laws to
tenancy by the entirety property does not extend beyond the state's borders to non-homestead
property. Generally, a state's statutes have no extraterritorial force beyond its borders. *In
re Ginther*, 282 B.R. 16, 19 (Bankr. D. Kan. 2002); *In re Peters*, 91 B.R. 401, 403 (Bankr.
W.D. Tex. 1988). Both Illinois and Michigan statutes are without extraterritorial effect
absent clear legislative intent. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801,
852 (Ill. 2005); *Sexton v. Ryder Truck Rental, Inc.*, 320 N.W.2d 843, 854-55 (Mich. 1982).
Various bankruptcy courts have prohibited debtors from applying the exemption laws of their
domicile state to property located beyond that state's boundaries. *See, e.g.*, *In re Sipka*, 149
B.R. 181, 182-83 (D. Kan. 1992); *Ginther*, 282 B.R. at 19-20; *In re Peters*, 91 B.R. 401, 413
(Bankr. W.D. Tex. 1988). *But see Arrol v. Broach (In re Arrol)*, 170 F.3d 934, 936-37 (9th
Cir. 1999) (holding that California law permitted the application of a homestead exemption
to property located outside the state); *In re Stratton*, 269 B.R. 716, 718-19 (Bankr. D. Or.
2001) (same). Despite these general principles, the issue at bar turns on the language of §
522(b)(2) and the Illinois exemption statute, the drafters' intentions in enacting these
provisions, and their application to the facts in this matter.

-14-

In contrast, the Debtor contends that the plain language of § 522(b)(2)(B) does not limit the phrase "applicable nonbankruptcy law" to the law of his domiciliary state. Rather, the Debtor argues that the phrase should be construed to mean Michigan law, the situs of the Michigan Properties. Under this construct, the Debtor would be able to properly exempt the Michigan Properties because Michigan law does not limit tenancy by the entirety to homestead property like Illinois law does.

Turning to § 522(b)(2)(B), there is nothing clear about the meaning of "applicable nonbankruptcy law" other than the fact that the applicable law is not bankruptcy law. The phrase is not among the defined terms in § 101 of the Bankruptcy Code. Moreover, a review of the legislative history associated with § 522 fails to elucidate Congress's intent in drafting the provision. Specifically, neither the Senate Report nor the House Report provides a clear definition of "applicable nonbankruptcy law." *See* S. REP. NO. 95-989, at 6 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5792; H.R. REP. NO. 95-595, at 126-27 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6087-88.

The phrase is frequently used throughout the Bankruptcy Code. *See, e.g.,* 11 U.S.C. §§ 101(35A); 108; 363(f); 365(c)(3), (h), & (n); 510(a); 524(c); 541(c); 552(b)(1); 723(a); 927; 943(b)(6); 1123(a); 1125(d); 1126(b)(1); 1142(a); 1222(d); & 1322(c) & (e). While several courts have interpreted "applicable nonbankruptcy law" as it relates to other bankruptcy provisions with

·15·

some degree of consistency,[9] the same cannot be said with respect to § 522(b)(2)(B). Instead,

courts have attempted to define the term in a variety of ways.

The Company Trustee urges the Court to adopt the position held by one line of cases that

exemptions claimed under § 522(b)(2) should be based on the law of the debtor's domicile. *See*

*In re Stockburger*, 192 B.R. 908, 910 (E.D. Tenn. 1996) (quoting § 522(b)(2)(A) but discussing

§ 522(b) in its entirety), *aff'd*, 106 F.3d 402 (6th Cir. 1997); *see also Drenttel v. Jensen-Carter (In*

*re Drenttel)*, 403 F.3d 611, 615 (8th Cir. 2005) (interpreting § 522(b)(2)(A)); *Arrol*, 170 F.3d at

936-37 (same); *In re Anselmi*, 52 B.R. 479, 493 (Bankr. D. Wyo. 1985) (construing §

522(b)(2)(B)). The district court in *Stockburger* reasoned as follows:

> [L]ooking at the context of § 522(b), . . . a plain reading of the
> section leads to this result: it is the debtor's domicile which
> governs. Nowhere does section 522(b) refer to the location of the
> property, nor does it refer to the location of the bankruptcy court.
> The statute clearly makes the exemption dependent upon the state
> law of the debtor's domicile.

192 B.R. at 910.

In contrast, as the Debtor argues, another line of cases takes the position that "applicable

nonbankruptcy law" means the law of the state in which the asset is located. *See, e.g., McNeilly*

*v. Geremia (In re McNeilly)*, 249 B.R. 576, 580-81 (B.A.P. 1st Cir. 2000); *Kaplan v. First Options*

*of Chi., Inc. (In re Kaplan)*, 189 B.R. 882, 892 (E.D. Pa. 1995); *In re Nelms*, No. 04-53521, 2005

WL 318802, at *3-4 (Bankr. E.D. Mich. Feb. 4, 2005); *In re Weza*, 248 B.R. 470, 473-74 (Bankr.

---

[9] *See, e.g., Patterson v. Shumate*, 504 U.S. 753, 759 (1992) (interpreting "applicable nonbankruptcy law" in § 541(c)(2) to include both federal and state law); *Gladwell v. Harline (In re Harline)*, 950 F.2d 669, 674 (10th Cir. 1991) (same); *In re Sims*, 185 B.R. 853, 865 (Bankr. N.D. Ala. 1995) (defining "applicable nonbankruptcy law" in § 1322(c)(1) to include applicable state and nonbankruptcy federal law).

D. N.H. 2000); *In re Cochrane*, 178 B.R. 1011, 1020 (Bankr. D. Minn. 1995); *In re Hayden*, 41

B.R. 21, 23 (Bankr. E.D. Ky. 1983). As one court explained:

> The use of the conjunction "and" between the two subdivisions of
> § 522(b)(2) shows that Congress intended to allow debtors to
> cumulate the protections that might be available under the two
> different sources described in them. Of the two sources, only one
> is keyed into the situs of the debtor's pre-petition domicile–that
> under § 522(b)(2)(A), which includes federal statutes outside the
> Bankruptcy Code, and state or local statute, judicial decision, or
> other "law." The other one–the one that the Debtor invokes in this
> case–is not so limited; § 522(b)(2)(B) contains no provision
> limiting the governing "applicable nonbankruptcy law" to that of
> the debtor's state of domicile. In wording § 522(b)(2)(B) this way,
> Congress clearly chose to identify the protected class of property
> by two characteristics: its legal form of ownership, and the
> existence of protection "under applicable nonbankruptcy law" for
> assets held in such forms of ownership. Insofar as the latter
> characteristic is concerned, the situs of the debtor's domicile is
> irrelevant. It indeed seems to be just as the Debtor's counsel
> argues: the situs of the asset that is held by a debtor in bankruptcy
> as a tenant by the entireties is the sole determinant of whether §
> 522(b)(2)(B) can protect it from the claims of the bankruptcy
> estate.

*Cochrane*, 178 B.R. at 1019-20.

Yet another option utilized by some courts is application of the domicile state's law in

order to determine which state's exemption laws apply under § 522(b)(2)(B). *See, e.g, In re*

*Gillette*, 248 B.R. 845, 849 (Bankr. M.D. Fla. 1999); *In re Calhoun*, 47 B.R. 119, 122 (Bankr.

E.D. Va. 1985). One treatise on the subject provides as follows:

> Consistent with the unambiguous language of section 522(b)(2),
> it is not venue nor location of property that determines the
> allowance of the bankruptcy debtor's exemptions[;] it is the
> location of the debtor's domicile. That having been determined,

-17-

> the state law of that domicile may provide for the application of
> law other than the domiciliary state's law for property that is not
> located within the domiciliary state. Such an outcome may . . . be
> determined [only] by looking to the particular law of the state of
> domicile.

WILLIAM H. BROWN, LAWRENCE R. AHERN, III, & NANCY F. MACLEAN, BANKRUPTCY

EXEMPTION MANUAL § 3.05, at 72-73 (2005). *See generally* RESTATEMENT (SECOND) OF

CONFLICT OF LAWS § 132 (1971) ("The local law of the forum determines what property of a

debtor within the state is exempt from execution unless another state, by reason of such

circumstances as the domicil[e] of the creditor and the debtor within its territory, has the dominant

interest in the question of exemption. In that event, the local law of the other state will be

applied."). *Cf. Taylor v. Taylor*, 254 N.E.2d 445, 446 (Ill. 1969) (finding that exemptions applied

in garnishment proceedings are typically "governed by the law of the forum of the proceedings");

*Jakubik v. Jakubik*, 566 N.E.2d 808, 810 (Ill. App. Ct. 1991) (noting that Illinois law applied in

marital dissolution proceeding because the parties invoked the statutory power of that state's

courts). The Court agrees with this approach, which under the Illinois statute limits the Debtor

to properly claiming as exempt only his Illinois homestead property held in tenancy by the

entirety.

Under the principles of statutory construction, a plain reading of § 522(b)(2) reveals that

the exemption laws of a debtor's domicile are directly tied to the exemptions allowed under §

522(b)(2)(A). No such limitation is expressly provided for in § 522(b)(2)(B) as it relates to

property interests held in either tenancy by the entirety or joint tenancy. *See Cochrane*, 178 B.R.

at 1020 (finding that "§ 522(b)(2)(B) contains no provision limiting the governing 'applicable

nonbankruptcy law' to that of the debtor's state of domicile"). However, the Court may not read

-18-

§ 522(b)(2) in a vacuum. *See In re Churchill Props. III, Ltd. P'ship*, 197 B.R. 283, 288 (Bankr. N.D. Ill. 1996). That is, the Court must fairly construe and apply § 522(b) in harmony with the Illinois exemption statute. *See Johnson*, 787 F.2d at 1181; *Kohler*, 12 F.3d at 642. The Court sees no patent conflict between the text of § 522(b)(2)(B) and 735 ILL. COMP. STAT. 5/12-1201.

In the matter at bar, Illinois is undisputedly the Debtor's state of domicile under § 522(b)(2)(A). Thus, the Court must consider and apply the Illinois exemption statute which limits a debtor's exemptions to those "permitted under the laws of Illinois." 735 ILL. COMP. STAT. 5/12-1201. The plain meaning of the statute allows the Debtor to utilize only those exemptions provided by Illinois law. The cases on this point appear uniform. *See In re Rosenzweig*, 245 B.R. 836, 839 (Bankr. N.D. Ill. 2000); *Fishman*, 241 B.R. at 572; *In re Franklin*, 210 B.R. 560, 563-64 (Bankr. N.D. Ill. 1997); *In re Ball*, 201 B.R. 204, 206 n.4 (Bankr. N.D. Ill. 1996); *In re McClure*, 175 B.R. 21, 22 (Bankr. N.D. Ill. 1994); *In re Templeton*, 146 B.R. 757, 759 (Bankr. N.D. Ill. 1992); *In re Peacock*, 119 B.R. 605, 607 (Bankr. N.D. Ill. 1990), *aff'd*, 125 B.R. 526 (N.D. Ill. 1991). Equally significant, Illinois law limits the creation of tenancy by the entirety to homestead property. 765 ILL. COMP. STAT. 1005/1c. Accordingly, the Debtor may properly claim an exemption in the Illinois Property which he held with his spouse as tenants by the entirety as their homestead at the time of the bankruptcy filing. (*See* Docket Nos. 39 & 44.) Thus, the Court overrules the objections of the Company Trustee and Midwest Bank with respect to the claim of exemption in the Illinois Property.

In contrast, construing § 522(b) and the Illinois exemption statute in a harmonious manner precludes the Debtor from properly claiming exemptions in the Michigan Properties. The Court finds that the application of § 522(b)(2) to the facts in this matter effectively makes the law of the

·19·

domiciliary state the controlling law for purposes of both §§ 522(b)(2)(A) and (B). Although §

522(b)(2)(B) does not expressly reference a debtor's domicile state as § 522(b)(2)(A) does, the

federal exemption is decidedly dependent on state law. *Tolson*, 338 B.R. at 364 ("Even though

[§ 522(b)(2)(B)] is a federal exemption, it is clearly [dependent] on state law as the entireties

interest is exemptible only to the extent such interest is exempt from process under applicable

nonbankruptcy law."). Thus, the Court concludes that "applicable nonbankruptcy law" referenced

in § 522(b)(2)(B) is tied to exemptions allowable in the relevant state opting out of the federal

exemptions, which in this case is Illinois. Had Congress intended to expand that subsection to

any or all states wherein a debtor might own such property, it could have enacted legislation to

that end, but it did not do so. Likewise, the Illinois General Assembly could have expanded the

benefits and exemptions for tenancy by the entirety property to non-homestead properties in other

states, but apparently chose not to. As discussed above, Illinois limits creation of tenancy by the

entirety to homestead property. Undisputedly, the Michigan Properties are not the homestead

property of the Debtor. Thus, the Debtor may not properly claim exemptions in those properties

under § 522(b)(2)(B). The Court therefore sustains the objections of the Company Trustee and

Midwest Bank to the Debtor's claims of exemptions in the Michigan Properties.

The Court is mindful of the fact that Illinois exemption statutes must be interpreted

liberally in favor of the Debtor. *See In re Barker*, 768 F.2d 191, 196 (7th Cir. 1985); *In re Hellen*,

329 B.R. 678, 681 (Bankr. N.D. Ill. 2005); *In re McKinney*, 317 B.R. 344, 345 (Bankr. C.D. Ill.

2004). The Court also acknowledges that, if it is possible to construe an exemption statute in

ways that are both favorable and unfavorable to the Debtor, then the favorable method should be

chosen. *See Barker*, 768 F.2d at 196; *In re Dealey*, 204 B.R. 17, 18 (Bankr. C.D. Ill. 1997).

·20·

However, the purpose of the exemption provision is to protect debtors and their families from

destitution and to provide them the necessary shelter from creditors, thereby safeguarding their

fresh start in bankruptcy. *Schriar v. Mose (In re Schriar)*, 284 F.2d 471, 473-74 (7th Cir. 1960)

(noting that the chief objectives of exemption laws are to insure a means of livelihood and

subsistence to the debtor, for the protection and welfare of his family, and to prevent the

possibility that the debtor or his family might become "a public charge upon the state"); *see also*

*Rainier Equip. Fin., Inc. v. Taylor (In re Taylor)*, 861 F.2d 550, 552 (9th Cir. 1988) (stating that

debtors are allowed to exempt certain property to ensure that they will not become "a public

charge" (internal quotation omitted)); *In re McLaren*, 227 B.R. 810, 813 (Bankr. S.D. Ill. 1998)

(finding that exemption statutes historically were enacted "to protect families from the

improvidence of the head of the household"); *In re Wright*, 156 B.R. 549, 554 (Bankr. N.D. Ill.

1992) (explaining that "[t]he purpose of the exemption provision is to foster the debtor's fresh

start in bankruptcy"); *In re Marriage of Logston*, 469 N.E.2d 167, 172 (Ill. 1984) (discussing the

policy underlying an exemption statute and noting that "a creditor should not wholly deprive the

husband and father of the means of supporting his family, usually helpless in themselves, and

preventing them from becoming a public charge" (internal quotation omitted)).

In this matter however, if the Debtor is not able to claim exemptions in the Michigan

Properties, he is far from destitute.  In fact, he was a millionaire at the time of the bankruptcy

filing.  On his amended Schedule A alone, the Debtor lists his interests in various pieces of real

property which total $1,745,000.00.  (Docket No. 39.)  Clearly, the Debtor will not become a

public charge by virtue of the fact that he is not entitled to claim exemptions in the Michigan

Properties.  Indeed, it is not a debtor like the one in the matter at bar that the exemption statutes

-21-

were enacted to protect. Despite the directive to liberally construe exemption statutes in favor of

the Debtor, the Court "must be mindful to avoid interpreting [the] exemption statute in a way not

contemplated by the legislature in enacting a state's exemption scheme." *In re Simpson*, 238 B.R.

776, 779 (Bankr. S.D. Ill. 1999) (*citing, inter alia, Schriar*, 284 F.2d at 474).

Moreover, the Court notes that the Debtor could have changed his domicile to Michigan

in a timely fashion and then filed his Chapter 11 petition there. In such a situation, he would not

have been limited to the exemptions provided under Illinois law.

Although the Debtor cites to a number of cases in support of his claims of exemptions in

the Michigan Properties, his reliance on those cases is misplaced. Specifically, none of the

decisions construes or applies § 522(b)(2) and the Illinois exemption statute, and the facts of the

cases are completely distinguishable from those here. For example, *In re Paeplow*, 972 F.2d 730

(7th Cir. 1992), discussed whether entirety property under Indiana law entered into the bankruptcy

estate under § 541(a)(1) and whether that state law permitted the debtor to shield exempt property

he held with his spouse as a tenant by the entirety from joint creditors. *Id.* at 733-38. The court

held that the intention of the Indiana legislature in enacting the exemption law was to protect

entirety property from claims of all creditors, including joint creditors, "to the greatest degree

possible." *Id.* at 737. The Seventh Circuit did not address § 522(b)(2)(B), attempt to define the

term "applicable nonbankruptcy law," or discuss the Illinois exemption statute.

Further, the Debtor cites to *In re Gillette*, 248 B.R. 845 (Bankr. M.D. Fla. 1999), *In re*

*Cochrane*, 178 B.R. 1011 (Bankr. D. Minn. 1995), and *In re Nelms*, No. 04-53521, 2005 WL

318802 (Bankr. E.D. Mich. Feb. 4, 2005), in support of his position. While each of these cases

·22·

construed the language of § 522(b)(2)(B), the courts did not harmonize that provision with a state exemption statute expressly limiting the debtors' claims of exemptions.

In short, none of the cases cited by the Debtor bolsters his contention that he is entitled to claim exemptions in the Michigan Properties. The Company Trustee and Midwest Bank have met their burden of proving by a preponderance of the evidence that the Debtor's claims of exemptions in the Michigan Properties are not proper. Accordingly, the Court sustains the objections of the Company Trustee and Midwest Bank to those exemptions but overrules the objections with respect to the Illinois Property.

## V.  CONCLUSION

For the foregoing reasons, the Court sustains the objections filed by the Company Trustee and Midwest Bank to the Debtor's claims of exemptions in the Michigan Properties and overrules the objections with respect to the Illinois Property. The objection filed by ABN AMRO and LaSalle Bank is untimely and therefore overruled.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

ENTERED:

DATE: _____5/31/6_____

**John H. Squires**
**United States Bankruptcy Judge**

cc:  See attached Service List

## SERVICE LIST

### Joseph William Giffune, Jr.
### Bankruptcy No. 05 B 54583

Michael M. Schmahl, Esq.
Patricia K. Smoots, Esq.
McGuire Woods LLP
77 W. Wacker Drive, Suite 4100
Chicago, IL 60601-1815

Steven B. Towbin, Esq.
Richard M. Fogel, Esq.
Ann E. Stockman, Esq.
Shaw Gussis Fishman Glantz Wolfson
& Towbin LLC
321 N. Clark Street, Suite 800
Chicago, IL 60610

Jeffrey M. Schwartz, Esq.
Gardner Carton & Douglas LLC
191 N. Wacker Drive, Suite 3700
Chicago, IL 60606-1698

August A. Pilati, Esq.
Gesas Pilati and Gesas, Ltd.
53 W. Jackson Blvd., Suite 528
Chicago, IL 60604

Jerry L. Switzer, Esq.
Jenner & Block
One IBM Plaza
Chicago, IL 60611-7603

William T. Neary, United States Trustee
227 W. Monroe Street
Suite 3350
Chicago, IL 60606

Timothy L. Binetti, Esq.
Riffner, Barber, Rowden & Manassa
LLC
1834 Walden Office Square, Suite 500
Schaumburg, IL 60173